May it please the Court, my name is Greg Smith, and along with co-counsel John Lowe and Ning Yi, I represent Genli Ye Gon, the appellant petitioner in this action. During my allocated time, I plan to primarily argue three issues, the 3188 claim, the due process claims, and the suspension clause claim. I will also touch on Ning Yi's separate issues and invite the Court to ask Mr. Ye questions directly if it wants. I will also briefly preserve our argument that Miranescu was wrongly decided. And despite the fact that I won't be describing the torture here like I did in the District Court, I will remind this Court of the very serious torture risks Ye Gon will face if he's extradited. There are general concerns that even the State Department has acknowledged.  Plus the individual risks that Mr. Ye Gon himself faces due to the nature of this case, as verified by an expert in the record and co-defendants in his very case in Mexico who swore that they were tortured in this very case. These are things no defendant, no matter what their alleged crime, should have to endure. You cannot possibly look at this record, especially the sealed record, and be comfortable that Mr. Ye Gon will not be tortured or killed in Mexico. Let me turn now to the 3188 issue. 3188 says, if a person is not delivered up and conveyed out of the U.S. within two calendar months after his commitment, any judge upon a proper application and proof of reasonable notice may order the person discharged out of custody unless sufficient cause is shown why it ought not be ordered. That clock was admittedly told after Mr. Ye Gon's commitment until his legal rights were finally determined by denial of certiorari. But cert was denied June 22nd of 2015. More than two months then passed. We gave reasonable notice on August 21st, and then we filed our request for 3188 relief two days later on the 26th of August. The government made no decision until September 18th. In fact, we weren't even notified until three days later. The government argues that the two-month clock start date was told until this court's mandate issued on July 7th. But that is incorrect under Gonzales v. Thayer and also under Jimenez in Justice Goldberg's decision. But even if it were correct, the bottom line is it was still more than two months. So a 3188 violation clearly does exist. So the only question is what is the effect of that violation? We submit that discharge should have been granted unless sufficient cause was shown for the delay. That unless clause is in the statute for a reason. It is the government's burden to come forward with reasons, sufficient cause. So they exceeded the two-month period by what, two weeks? Your Honor, we think it was by about a month. And the government indicates that it, I think they're saying it was a shorter period, yes. But either way, they exceeded it. And the district court erred in The district court's determination of sufficient cause be reviewed for abuse of discretion. Yes, Your Honor. It's a statutory standard. It's not an absolute standard that the two-month period is simply cut dry. It can be extended for sufficient cause. And the question is, isn't sufficient cause reviewed under an abuse of discretion standard? Yes, Your Honor. Your Honor, we submit that it was an abuse of discretion because the district court misapplied the law. It shifted the burden to us to prove that there wasn't sufficient cause rather than what the statute requires, which is the government showed sufficient cause. By shifting the burden to us, that was an error of law, which by definition is an abuse of discretion. But the point is, at the end of the day, the district court found sufficient cause. And I guess the reasons that we found sufficient cause was that the tremendous, voluminous materials that you submitted to the State Department for its review, number one, and I suppose also that the filing of the habeas petition may toll the two-month time frame. Let me try to address those. You said that you guess and you suppose, and that's the problem. By guessing and supposing that — No, it was stated. The court said there was sufficient cause, but its reasons was that we had not disproven sufficient cause, and that was shifting the burden improperly, and that was an error of law, which is the abuse of discretion. In terms of the tolling by us filing the 3188 petition, our filing didn't delay anything. There's no evidence in the record, none, that the government delayed in its decision because we had filed the new 3188 claim. Look at the docket. Our filing is August 24th. There is no government filing between our original filing and the time that they made their decision. We didn't delay their decision at all. Nor did they claim that it did. What are we arguing about here? Suppose we remand. Right. I'm not sure that the district court misplaced the burden of proof, but suppose we remand. The district court is going to say, well, yeah, the government has proved sufficient cause. I mean, because at the end of the day, the district court said, first of all, the excessive time here was very brief. I'm not sure what the prejudice was. There were voluminous materials filed with the State Department, and then there was a habeas filing. But the whole thing with this let's remand and get the burden of proof right on sufficient cause, it's all from the very beginning. I don't blame you, but you've been fighting extradition at every turn, and the strategy has been delay, delay, delay. And a remand on a point such as that fits into the strategy perfectly. It is. It's using the courts to just delay, delay, delay something that has a very sensitive political dimension. Your Honor, Judge Turk expressly found that we had not unduly delayed this case, so I do take issue with that. In terms of the filings, we submitted only five letters on one issue, so it was not this voluminous stuff. Sure, we attached . . . But doesn't it fit your strategy of delay is better than extradition? Doesn't that fit your strategy? I'm not saying it's bad or good, but that's the point of the question. You may claim you have it right, and so you shouldn't run from the fact that it's true, but doesn't that fit your strategy? Your Honor, that is not our strategy. It is not our strategy. Your strategy is not to keep him in this country and keep him from being extradited? Our issue . . . we are seeking to prevent an extradition, but that's not a delay. We're trying to prevent extradition, not simply delay it. Second best. Not best, but second best. Let me address the court's . . . You could answer that question. Well, our position is that a remand will make a difference because we believe that what happened here, that the delay was not simply administrative review. There's no evidence one way or the other on that. We noted below, and we submit here, the government, we believe, sacrificed our client's individualized liberty interests because of its institutional diplomatic interests. Yes, there was a delay of a couple of weeks, but what happened at the end of that couple of weeks? Thirteen Mexican prisoners suddenly are getting extradited to the United States, announced the same time that they announced that they've approved Mr. Egon's extradition. We believe that his individual liberty interests, which are codified in 3188, were sacrificed because the government wanted to cut a prisoner's swap. And that is exactly what 3188 says you cannot do. You cannot sacrifice a person's individual interest and delay the case for broader interests such as that. Let me move on to the due process issue because I do want to spend some time here. It's very important. This is the easiest and clearest reason to vacate and remand. There is no question, none, that the district court misconstrued the argument. It wrongly thought that our Claim 3 was the same argument as Claim 2, the torture arguments, which it is not. It declared, therefore, that it— I find this due process argument—how long have you been litigating in the courts? On this— We're giving you due process right here and now. Yes, Your Honor, but the bottom— The district court gave you due process. There was no—nobody was—the due process argument and the suspension clause argument are interlocking. They dovetail, and the district court did not get them confused. And I don't understand the suspension clause argument because I thought you got to file your habeas petition under 2241. I mean— But the merits aren't being— The due process was before Judge Conrad. The due process is before us. The due process was open to you in Congress by Congress giving you 2241 petition. You have due process here as we speak. Your Honor is correct, but you talked about how long has this been going on. Here's the bottom line. We still don't know what he's being extradited on. The problem is not with the courts. The problem is the government stubbornly refuses even to tell us what they have decided in secret, what he is being extradited on. And the government cannot be allowed to play hide-the-ball, Judge Shedd and Judge Wilkinson. That's as basic as it gets. We're entitled to know if they say he's being extradited. What's he being extradited on? Because when he gets to Mexico, he would be prejudiced by that. He can't raise a rule of specialty argument if he doesn't even know what he's being extradited on. And if they're extraditing beyond what the courts approved, if they are extraditing him on additional charges, I could bring a separation of powers claim. But I can't do it because we don't know. This is even—District Judge Conrad said it does seem like they ought to be telling you that. But they can—oddly, it's bizarre. Why can't we at least know what charges he's going to face, what charges he's been approved for extradition on? This is not China. This is not Iran where we make secret decisions on criminal cases. Yet that's what's happened here. The government has decided it's going to extradite him, and they stubbornly refuse to even tell us what charges he's being extradited on. How basic is that? That's the due process issue. It's not a criminal proceeding. Your Honor, it is a quasi-criminal proceeding, and it affects his liberty. He has a liberty interest, as the Ninth Circuit has recognized, and a property interest because this is a money laundering charge. Is he going to face money laundering charges? Is his property at risk? We don't know because they won't even tell us what the charges are. At the bottom line, that is as basic as it gets. He's got to know what he's being extradited on. But it's Mexican government that's leveled the charges, is it not? They're the ones that want it extradited. It's not the United States government that's bringing the charges. But he can't raise a rule of specialty defense in Mexico. He can't even assert it if he doesn't know what he's being extradited on. But you talk about the charges and notice of charges. That's within the province of the Mexican government. But under the treaty, they are limited in what they can prosecute based on what the extradition approval is. We don't know what the extradition approval is. That's the problem, Judge. It's not with the courts. Not with this court. The courts have been fine to us. The problem is that the government won't give us basic information. Why are they playing hide the ball on this? It makes no sense to give us the basic information. It's as basic as it gets. You say you've approved an extradition. On what? We don't know. I have to confess. I find it absolutely bizarre that they will not even tell us what the charges he's being extradited are on are. The court issued a certificate of extradibility. Right. Which required finding probable cause on specific charges, right? So you know about that. We know what the courts have approved. But we don't have allowed. But then it turns to the State Department and they are supposed to decide which charges get actually approved. And we don't know it. They won't tell us. I don't know why. Can you tell me, before you sit down because your time has expired, what difference do the immigration proceedings have on the effect of the outcome here? Your Honor, I appreciate that. Mr. Yee is the lawyer that's… I couldn't understand his pleading. So maybe you can tell me in words of one syllable that I can understand. The argument is that this court ought to exercise its discretion to hold in abeyance the extradition case because he also has a separate and independent right to asylum. And that he should not be refouled. Why should one defer to the other? I don't understand that. I think he's entitled to both issues. And if you look, the way I would tell the court to look at that is the last paragraph of the bear-pinned decision where the court denies the challenge there but without prejudice. Basically what it's saying is if the Secretary of State ordered his surrender on the extradition before the asylum case was over, that he could refile the charge on the ground that he also was entitled separately and independently not to be refouled out of the country if he faced a risk, a genuine risk of persecution. Is there an order of removal here? There is no order of removal. But he has affirmatively sought asylum. And we believe that both of those rights have to be— A lot of times people contest orders of removal in the courts after the fact of deportation. I'm sorry, lots of people— I said if there are orders of removal, a lot of times they are judicially contested after the fact of deportation. Yes, Your Honor. If there's an order of removal. You say there's been no order of removal, but I'm aware of no rule that requires further postponement of extradition proceedings because something is in an immigration status. I think that the point is there's no rule either way. I think Berrapin even says that the interplay between the extradition process and the asylum process has been infrequently explored. And I think Mr. Yee's argument is that he's entitled to both. He has a due process right to asylum in addition to his extradition challenges. We can explore this in your reply, but I feel as though I'm being asked to plunge into the middle of a political controversy between the United States and Mexico. I'm uncomfortable with that, so you might think of just addressing it in your rebuttal argument. Okay? Okay, thank you. Thank you. Mr. Glaser. May it please the Court. William Glaser for the Federal Respondent, Secretary Kerry, and U.S. Marshal Holt. Turning first to the Section 3188 issue, there's a disagreement between the parties whether there was a delay of 27 days after the expiration of the period or a delay of 11 days. In any event, we think that it's 11 days, but in any event, the district court had broad discretion to deny release under 3188. Regardless of whose burden it is to demonstrate good cause, it's a discretionary standard. It says the district court may order him discharged. The district court did not abuse its discretion in this case. The district court looked at the extensive record, not only in the underlying extradition hearing in front of the magistrate judge, but also the additional information that Mr. Yeegan submitted to the State Department. And the district court decided, based upon that and other factors, such as the timing of his filing and the extensive length of his process. Did the habeas filing, does that toll the two-month time frame or did it in some way cause the minor delay here? Your Honor. Which one? It did not. It did not. From my understanding, and again, this is internal State Department issues. My understanding, it didn't slow things down. The State Department did not say, oh, well, we'll hold off because of the filing of this additional habeas claim. Does it in the usual case toll this sort of two-month period? Your Honor, in the usual case, I think a habeas filing would because that's kind of what tolls it initially. After the certificate of extradition is entered, if a habeas petition is filed, then it's tolled all the way up to the Supreme Court's denial of cert. In this case, there was a stay in place, and that didn't expire until after the Supreme Court's denial of cert. But to answer then the other part of your question, whether or not this does toll, I mean, in an ordinary case, it would. Although I would concede that once the two months had expired, about 11 days. Did the district court use the filing of the habeas petition in its analysis? It did. Yes, Your Honor. It was the filing of the habeas petition, and then it was also the fact that the State Department, in its review of eligibility for extradition, that there was a great volume of materials submitted to it. That's correct, Your Honor. If I can address briefly how it usually works, the extradition hearing itself usually is not that complicated. The things that are submitted are the treaty, the charging documents from the other country, and it's a pretty easy job for the magistrate to say, okay, is there a probable cause? Is there a treaty in place? And certify the extraditability. Is it about actually being notified of the charges against him? There's a certificate of extraditability that the government files. Does that have notice of the charges? Yes, Your Honor. The certificate of extraditability is entered by the magistrate, the extraditing U.S. magistrate, and that does have notice of all the charges that the magistrate has approved extradition on. Are there other charges that he could be subject to that you haven't told him about? Your Honor, no. Are there other charges that are the basis for the extradition order that you haven't told him about? No, Your Honor. The only thing— You're making a representation here in federal court. There aren't any. The secretary has not approved extradition on anything beyond what the magistrate approved. Now, his argument is, well, the secretary might have approved on fewer charges, and he does not know. If that's the case, he doesn't actually have standing to assert a rule of specialty argument in the United States courts. That was determined in his previous appeal in 2014. This court decided in his very case. Now, if in Mexico he has the ability to assert a rule of specialty, that rule, just to explain, is that you can't be prosecuted on more charges than were approved for extradition. If that were the case, he could request the Mexican government to disclose the surrender warrant that the State Department issued in this case so that he could determine whether or not Mexico was charging him on more. Just cut to the chase. How did he receive notification of the charges on which the Mexican government was seeking extradition? Seeking extradition, that's been disclosed from the get-go. That was the magistrate hearing that was dealing with the Mexican request. Additionally, he got notice of what the magistrate approved, and his argument now is that the— Was that a lesser group than what the Mexican government had requested? No. The magistrate— It's the same group. It's the same group. Now, he points to facts suggesting that Mexico has subsequently charged him with additional charges. I really can't make any representations about that. But it's not being extradited on that basis. That's correct, Your Honor. The magistrate has not approved extradition on that, and there's no way the secretary could therefore extradite him on more than the magistrate approved. It's not his concern that when he gets extradited under the U.S. process, under the treaty, that when he gets to Mexico, all bets are off. That's his argument, really, isn't it? That's correct, Your Honor. And, frankly, the United States does its best up to the point, but we have to honor the extradition treaty with Mexico? That's a problem in any case. Yeah, it's going to be a problem. I mean, it's an interesting point, but I would think that would be—in here, the problem would adhere in any extradition. Well, if it's a matter of Mexico violating the extradition treaty with the United States, then there are systems in place for the United States to enforce our treaty rights. The rule of specialty, for example. I'm not suggesting that's a legal impediment. I'm just saying, underlying this argument is we want to keep him here. There's some arguments, I think, on some communications from the State Department that maybe it wasn't as clear to him as he wanted it to be. Yes, Your Honor. But the bottom line that seems to be underlying all this is he's concerned what's going to happen to him under any kind of law you want to talk about or whatever in Mexico. And the U.S.'s response, State Department's response, is we do what we can under the treaty we have with Mexico. We've done that. That's all we can do. That's all we do. That's correct, Your Honor. We can enforce our treaty rights if Mexico violates them, but there's nothing else that we can do. The thing that I suggested to your opposing counsel is Mexico has rights under this treaty. They have extradition rights under this treaty. And I feel like, with this case, that I'm asked to just put a wrench in the proceedings and just lie down on the road to prevent and seize on anything I can seize on in order to delay the extradition. And at a certain point, that begins to undercut the rights of the Mexican government under the extradition treaty. And it puts me and the court, their panel, into the middle of a dispute, into the middle of a treaty execution between the United States and Mexico. And I'm sort of, the courts are sort of being asked to just jump into the middle of this in a fashion that, where delay works in erosion of the treaty rights that the Mexican government signed up for, which was to get an extradition in situations where the Mexican government believes somebody has committed serious offenses in Mexico, and that government wants to bring the individual to account in Mexico. That's what they signed the treaty for. I agree. And, you know, who are we to thwart that purpose? Can you tell me whether the immigration proceedings have any effect here? Your Honor, they do not have any effect here. What's your authority for that proposition? Well, first of all, we cited the Berrapin case. There hasn't been a lot of authority on it. But if I can just step back and look at the structure here. We have an immigration court, which is actually sort of an arm of the executive, that makes a determination under the Convention Against Torture, which I assume he's asserting that claim in the immigration court, that immigration court would make a determination. If it found against him, he could take it to the Board of Immigration Appeals. If the Board of Immigration is found against him, he could seek. What he wants to be doing is doing that. Correct. And having his being sent to extradition to Mexico stayed while he's doing that. Right, but that's a completely separate process. All that he's entitled to would be withholding of removal in immigration court. That's all the relief immigration court could give him is withholding of removal under the implementing regulations for the Convention Against Torture. As you pointed out to me, you're all the United States government. So how do all these things work together is what I'm trying to tease out. They're really completely separate because extradition is a separate proceeding. It has a separate statutory process. I really do understand that. I'm sort of at a loss as to how this all happened. If we should affirm, is he going to be extradited as soon as our mandate issues? Yes, Your Honor. What's going to happen with respect to the immigration court is what I'm asking. He can either continue in those immigration proceedings if he's seeking an asylum affirmatively. But I'm guessing that the United States then is going to dismiss its removal proceedings because there's no need to seek removal once he's been extradited. What I can't understand is why they haven't done that already. Well, it's just been administratively stayed because usually the immigration court gives deference to the extradition process, if that makes sense. But the decision in the immigration court has no preclusive effect in this court or any other federal court that's considering the extradition process. There's just no way that an immigration judge or even the Board of Immigration Appeals would be preclusive if they determined he was entitled to relief under the convention. Do you make any determination on extradition as to the possibility of torture? Yes, Your Honor. And maybe I didn't address your question earlier carefully enough. The Secretary of State has said there is not a substantial likelihood that he will be subjected to torture in Mexico. He's been told that, that the State Department has given him those assurances, and that's what he gets. He doesn't get any additional process. The Congress has not given the courts the ability to second-guess the determinations of the executive when it comes to the Convention Against Torture outside the immigration context. And that would be the removal context. But it looks like, just making a comment on this now, it looks like you could have two different parts of the executive branch making a determination on the likelihood of torture upon return to the land of Mexico, and they could be entirely opposite one another. That is correct, Your Honor. That's possible. And I think that's the reason that the immigration court, which is an arm of the executive, defers to the Secretary of State. I think that's the reason. Were they deferring until we sort of asked about what was going on? No, Your Honor. They weren't. That's what it looks like on this record. We asked what was going on, and then they put the case in the bank. Well, what happened, I think, is clear from my 28-J response, is that the United States was unprepared for the immigration court to open this. That is, ICE was unprepared for the immigration court to open this. So, ICE filed that motion to reconsider, and the district court granted it and administratively closed the case again. We don't have any explanation for why the court opened it at one point. So, it wasn't as if the immigration court was about to— Were you even aware that it had been opened until you got a question from this court? Your Honor, I was aware of it, yes. I was aware when Mr. Egon filed his 28-J. But you just wanted to hear from us. Yes, Your Honor. At that point, as I made the arguments in my brief, I don't think it's relevant at all. This wasn't even raised in his habeas petition, so this court doesn't even need to consider it. So, that's why I didn't respond. Your argument is asylum there, asylum in the immigration setting, only goes to the question of removal. Removal authorized or not authorized under the immigration statute as to a person's presence in this country. And that's fine, but it has nothing to do with the other track under which he can be extradited and he's removed in that way. In other words, he could be not removable under the immigration laws, but he still can be extradited. That's correct, Your Honor. I think that's possible. Now— Possible? It's got to be. That has to be your answer. Well, certainly on something other than the Convention Against Torture, yes. Now, I think the Convention Against Torture, there's probably one right decision. And the Secretary of State, in this case, has made that decision. And that's not something for the— What was it doing around in the immigration court? Your Honor, it's been administratively stayed since, I believe, 2008 or 2007 in that case. Once the extradition proceeding started, the immigration court got out of the issue. Your answer that it's possible is what caused some consternation. The answer is, yes, that could happen. Yes, yes. Is that right? I think that could happen. The position is that the extradition process moves along under its own dynamic, that it has its own set of internal legal norms revolving around treaties and international relations and that, which are simply not a part of a removal process. Exactly. There are different proceedings with different legal criteria. They run under different statutes. And they, for all I know, could proceed simultaneously, but the extradition proceedings would moot out the removal proceedings. Exactly. But the point is, you know, I don't want to get them tangled up in one ball of yarn because they're not. That's correct. I totally understand that. But you said to us, okay, so one of the bases for not being removed is being tortured. So if there is a determination by the immigration court that there's torture here and the Secretary of State is determined there's no torture, what are we to do? Your Honor, that's not before the court. But if it were, I think that the Secretary of State would be entitled to deference. The immigration court is not the final proceeding. Okay. I got your answer. And that is just your own view? Your Honor, I think that corresponds with the views of the BIA and the Ninth Circuit in the Berrapin case, which is. . . Is there a way for them to get this to the immigration court, their torture claim? Is that torture claim there now? I don't know, Your Honor. We ordinarily don't affirmatively make statements as to whether or not someone has raised an asylum or torture claim in an immigration case. Okay. So if in the immigration, if you don't seek to remove him through the immigration procedures, does he have a remedy in the immigration court? I mean, in other words, does government have to trigger it by trying to remove him? No. He can affirmatively seek asylum. And, again, we don't publicly comment on whether someone has an asylum proceeding pending. That's not something that the government. . . That's our sort of official position. We don't comment on that. He could seek a civilly sort of. . . It's a civil proceeding. He could seek asylum. He could seek asylum independently of a removal proceeding. That's correct. And I'm not aware of any such proceeding existing. What we produce to the court related strictly to his removal proceeding. But, I mean, people come and seek asylum in this country and they're not in the midst of a removal proceeding. Exactly. But, you know, I do agree with simplified things if these removal proceedings were stayed when the extradition proceedings were going on. You know, it just seems to me in light of the fact that if someone is to be extradited, if it's going to move to the removal proceeding, normally people in charge of the proceeding that's going to be mooted if another court or another proceeding does something, they're only too happy to stay. We stay stuff all the time because a decision in another court or whatever may moot out what we're doing. I agree, Your Honor. And I think that this court's decision . . . Let me just be sure I understand what the government's argument is here. Right. Vis-a-vis these other immigration proceedings, whatever they are. We're just to go forward and we pay no attention to them and they have nothing to do with what is in front of us. Exactly, Your Honor. And at some time, if there is an immigration order saying they're concluding that he would be tortured, and we have our affirmance here, some other person somewhere is going to resolve the differences. Is that your position? Your Honor, I think at that point it would be mooted. If his extradition takes place, as it's supposed to under the treaty, he goes to Mexico, and if he has an affirmative asylum claim here, I think that would be mooted as well. But certainly his removal proceedings would be mooted. Well, if it does after he's in Mexico, but he's not in Mexico yet. He's been delaying it for what, four years? Well, about seven years, Your Honor. I don't know that I would count on him being in Mexico any time soon. Well, Your Honor, we think that that's one more reason for this court to affirm that this has been going on long enough. He's not entitled to any relief under 3188. He's not entitled to any review of the Secretary's decision under the suspension or due process clauses. I want to be sure I understand exactly what I just heard, and I think I do know. Not only did you answer questions about what might happen if he has a removal proceeding, you said you don't know if he has a removal proceeding. You don't comment on that, correct? Your Honor, I know that he has a removal proceeding. We've produced to the court in our 28Js orders from that. I don't know whether he has an affirmative asylum application separate from that removal proceeding, and I don't know if he has raised an asylum claim in his removal proceeding. So have you then conceded as a representative of the government that the left hand actually doesn't know what the right hand is doing? Your Honor, no, I have not conceded that. I'm aware of his removal case. I'm not aware of any affirmative asylum case. I don't think anyone else in the Department of Justice is, and we don't make comments on his asylum claims. So for the reasons set forth on our brief and mentioned here today, this court should affirm. Mr. Smith, you have some rebuttal time. Thank you, Your Honor. Your Honor, on the 3188 claim, he's admitted that our filing didn't slow anything down. So therefore, that was not anything that caused the delay. So there was never sufficient cause shown under 3188. Let me turn now to the court's question about getting into the middle of political controversy. The executive has a role in extraditions, but the judiciary also has a role.  I think it's an 1852 case. It was talked about how there was an extradition that John Adams initiated where he extradited someone without the court's involvement. It actually led to impeachment proceedings being brought against John Adams. They didn't proceed very far, but there were impeachment articles brought up against him because of a strong belief by Congress that the judiciary has a role in extraditions. It has its place. And one of those obligations is to ensure due process. On the due process, the government says, well, it's now saying the Secretary of State approved on nothing beyond the judicially approved charges. Well, that's the first we've heard because they haven't told us that before. And that's news to me. He also admits that it could be less than what's judicially approved. Well, you still don't know. I don't know. You don't know. Where's the due process? These decisions are being made in secret. We don't do that here in the United States. We don't decide people's liberty interests on things that affect them. He says, well, you can go and— You were aware of the charges on which the Mexican government sought extradition. They saw it. Yes, in the hearing before the magistrate judge. I assume the hearing before the magistrate judge was in an open court. Yes, we know what is— They're not being made in secret. This courtroom is open to anyone who wants to come in. The magistrate judge's hearing was open. The charges brought by the Mexican government or the charges sought by the Mexican government as a basis for extraditability were made apparent at that hearing. I don't understand. This is not done in secret. Okay. There are three stages. One is they ask for the charges. The second is the judiciary approves of the charges that are extraditable. And then the third is the Secretary of State decides what is, in fact, being extradited on. Even if the Secretary of State is the one that limits it, those charges that are not approved cannot be prosecuted in New Mexico. The bottom line is how can he possibly say in Mexico that they have exceeded the treaty if he doesn't know where the charges are? The problem that you think you've identified would be present in every extradition proceeding because we have no 100 percent guarantee that those countries with whom we have an extradition treaty are not going to try to slip in some charge above and beyond which they sought extradition. But that's down the road, and it isn't before us here. And to stall this on the basis of that possibility, which is present in every extradition case, seems to me to once again just put us in a position where we completely clog the whole process up. Judge, I take your point, but seriously, we are not the ones that caused this. We have been asking since early on for them to simply identify the charges they're extraditing on. They're the ones that won't tell us. I don't know why. It's baffling to me. But we can't perfect our rights unless we know. They haven't told me. We still don't know. You don't know. All right, let me ask this question. Is he being extradited? Did the Secretary of State approve extradition on the money laundering charges? Can you answer that? No. We don't know. Did they approve extradition on the gun charges? We don't know. How is he going to raise a rule of specialty claim in Mexico if he doesn't know? He can't. That's the problem. He can't perfect his rights. This is a secret decision, and I don't know why they won't tell us. Yes, it arises in every case, but why is that such a bad thing that you should require that as a matter of basic due process? If your son were extradited to Mexico, you better be sure you would want to know what charges he's going to be facing there. And you can't know that if the Secretary of State won't tell you. It's hard to get it in a way. We're an edgewise. So we know what they sought, right? We know what they sought. And we know what the magistrate judge approved. Right. So somewhere in that universe, you know that you're going to face in Mexico, right? No, because unless the Secretary of State also approves it, it is not an approved charge. I say, okay, unless. So it's within that universe. The Secretary of State, there are 12 charges. The Secretary of State only approves one through five. So you're less than the universe, but you're never more than the universe. So you know the charges you're facing. Well, again, this is the first he said that they're not seeking beyond because he's actually saying they can never extradite beyond the charges. Well, that's the opposite of what they argued to this court in front of Your Honor the last time around. They said we can extradite beyond the judicially approved charges. So how hard is it for you to send it back and get them to identify the charges? It's basic. It really is basic. You ought to know what the charges are you going to face. Take what he said today as being a fact. Okay. What is your burden? You know the charges. We still don't. You know it's going to be one of those 12 charges, one of those five charges, whatever number there are. It's going to be at least you're going to be within that universe. If there are 12 charges and they only approve five, he could argue in Mexico, Mexico you're limited to prosecuting five charges. He can't make that argument now because he doesn't have the information that he needs to make the argument. The necessary basic due process information of what he's being extradited on, which is the information he'd need in Mexico, he doesn't have and he can't get it. The idea that he has to go to a Mexican court to get American due process disclosures is absurd. Let me finally say that on the asylum claim that he did bring an asylum claim and whether the government wants to talk about it or not, it is there and it is out there and separate and gives him an independent right not to be under the non-refoulement obligations of the United States. He cannot be sent out of the country to face persecution. And I also want to say that Mr. Yee really, really, really wants to talk to this court if you will give him a moment to at least address his arguments. And I appreciate the court's indulgence. All right. Now we have—you've had the time. Mr. Yee, I'm going to allow you to make your argument for two minutes, no longer. Okay? Come on up. And I will say Judge Wilkinson has been very kind to you. The time allotted to the side has expired, but he's been gracious enough to allow you two minutes. Thank you so much. I deem it a lot of gift and generosity from the honorable panel. Go right to your argument. Okay. Thank you. I will be very quick. And the asylum issue is an intervening fact injected into this extradition complications, and I believe that asylum issue is on the top of the proceeding because in Fenway Ting versus the United States in 1889 case, the U.S. Supreme Court said the act of Congress is take on the top of the prior, previously passed U.S. international treaties. And we are talking about the 1979 U.S.-Mexican Treaty, whose Article 3 provided that the asylum issue should be decided if the political offender is not extraditable. And it further provided that the issue should be decided by the executive authority. According to the Rule 8 CFR 1003, that executive authority in this very case should be accurately pointing at the U.S. Immigration Court. And the case is pending at the U.S. Immigration Court. And the U.S. Immigration Court is the only court of the expertise, you know, to addressing the issue of asylum and the issue such administrative relief as, you know, withholding of deportation, removal, and CAT, Convention Against Torture, that the U.S. Convention, I don't want to address more on, you know, Article 2 of U.S. Convention Against Torture. And I want to, you know, address the issue to raise your honest attention to the Article 33 of Geneva Protocol. And Article 33 of Geneva Protocol virtually, you know, provided, outlined the French term non-referrament. Non-referrament, you know, is deeply rooted in French Revolution. During the course of 200 years, it addressed extradition, Your Honor. Non-referrament originally addressed no people shall be extradited into the country of claimed persecution. So, and... Your red light is on. We wanted to give you some time. We're giving you some extra time, but we appreciate it very much. Okay. Thank you, sir. One sentence. The time has expired at this point. Okay. All right. Judge Facciola, you know, wrongfully cited expert opinion and which was rebutted recently. You have to stop talking when he tells you to stop talking. All right. We will adjourn court and come down and recounsel. This honorable court stands adjourned. Signed by God Save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Dennis W. Shedd